United States District Court
Southern District of Texas
**ENTERED**
March 04, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CINDY WOOD LOGUE, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-03824 |
| | § | |
| WELLS FARGO BANK, N.A., ET AL., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**

In this foreclosure-related action, Plaintiff Cindy Wood Logue ("Logue") asks me to find that the four-year statute of limitations to foreclose has expired, giving her free and clear title to the property located at 1406 Thompson Street, Houston, Texas 77007 (the "Property"). In opposing this effort, Defendants Specialized Loan Servicing, LLC ("SLS") and Wells Fargo Bank, N.A. ("Wells Fargo") insist that the statute of limitations does not bar foreclosure efforts. They maintain that a 2009 acceleration of the mortgage loan at issue was abandoned, thus stopping the statute of limitations from running.

Before me now are separate motions for summary judgment filed by SLS and Wells Fargo. *See* Dkts. 41, 42. After reviewing the summary judgment briefing and the applicable law, I recommend that the motions be **GRANTED**, and this case dismissed.

## BACKGROUND

The relevant facts are not in dispute. In April 2007, Logue obtained a $380,000 loan from Morel Mortgage, LLC to purchase the Property. Wells Fargo held and serviced the loan from February 6, 2009 to August 1, 2019. Wells Fargo assigned the promissory note and deed of trust to SLS on August 2, 2019.

Logue admits that she defaulted on the loan in 2009. Consistent with that admission, Wells Fargo notified Logue that she was in default, accelerated the loan on February 13, 2009, and noticed the Property for foreclosure on two separate occasions in the spring of 2009. The first notice of foreclosure went out on March 17, 2009, setting an April 7, 2009 foreclosure sale. That foreclosure sale was canceled. A second notice of foreclosure was sent on May 2, 2009, scheduling a foreclosure sale for May 12, 2009. That sale was also canceled.

Logue married Kyle Logue on March 9, 2010. A month later, Logue's husband began serving in the United States Army. Facing the threat of foreclosure, Logue asked Wells Fargo in April 2011 to provide the benefits afforded by the Servicemembers Civil Relief Act, 50 U.S.C. § 3901 *et seq*. ("SCRA"). The SCRA was enacted in 2003 "to enable [servicemembers] to devote their entire energy to the defense needs of the Nation." *Id.* § 3902(1). "It accomplishes this purpose by imposing limitations on judicial proceedings that could take place while a member of the armed forces is on active duty, including insurance, taxation, loans, contract enforcement, and other civil actions." *Brewster v. Sun Tr. Mortg., Inc.*, 742 F.3d 876, 878 (9th Cir. 2014). Important to the present case, the SCRA prohibits a non-

judicial foreclosure sale of a servicemember's property "during, or within one year after, the period of the servicemember's military service." 50 U.S.C. § 3953(c).[1]

After reviewing Logue's written request for benefits under the SCRA, Wells Fargo sent her a letter on May 3, 2011, stating in pertinent part as follows:

> We received your request for benefits in accordance with the Servicemembers' Civil Relief Act (SCRA). Our review of your original loan documents has indicated that you did not develop this debt together with the service member listed on the military orders. According to the act, you are not eligible to receive benefits, however, in appreciation of your family's sacrifice in service of our country, Wells Fargo Home Mortgage will grant you full SCRA benefits, for the remainder of your spouse's active duty period.

Dkt. 42-2 at 27. For several years afterwards, Wells Fargo sent correspondence to Logue requesting confirmation of her husband's active duty status as required by the SCRA. In response to those letters, Logue confirmed the active duty status of her spouse. Although the couple divorced on September 9, 2013, and Kyle Logue's service in the United States Army ended on May 29, 2015, Wells Fargo continued to extend SCRA protections to Logue until May 2019.

After the SCRA benefits lapsed in May 2019, the loan remained in default. Wells Fargo sent Logue a new Notice of Default and Intent to Accelerate on May

---

[1] This prohibition applies only to an obligation on real or personal property owned by a servicemember that—

> (1) originated before the period of the servicemember's military service and for which the servicemember is still obligated; and
>
> (2) is secured by a mortgage, trust deed, or other security in the nature of a mortgage.

50 U.S.C. § 3953(a).

14, 2019. In July 2019, Wells Fargo sent Logue a formal Notice of Acceleration and Notice of Sale, stating that Wells Fargo was accelerating the maturity of the debt because Logue failed to cure the default. A foreclosure sale was set for September 3, 2019. Before that date, Logue filed suit in state district court, and she obtained a temporary restraining order halting the foreclosure sale. SLS and Wells Fargo then timely removed Logue's state court lawsuit to this Court.

Logue's live pleading, the First Amended Complaint, asserts that the foreclosure is barred by the statute of limitations and seeks title to the property free and clear of the mortgage. There are two causes of action: (1) declaratory judgment; and (2) suit to quiet title. SLS and Wells Fargo have both moved for summary judgment. They first argue that Logue's statute of limitations position fails because Wells Fargo abandoned the prior acceleration, thus restoring the promissory note's original maturity date. In the alternative, SLS and Wells Fargo claim that the doctrine of quasi-estoppel precludes Logue from asserting that the statute of limitations has expired. I need not address the quasi-estoppel argument because I find that Wells Fargo abandoned the prior acceleration.[2]

[2] SLS also requests that I dismiss the case for failure to state a claim under Rule 12(b)(6). Because SLS attaches 20 exhibits to its motion, I must treat its motion as one for summary judgment. *See* FED. R. CIV. P. 12(d) (If, on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *See Rodriguez v. Webb Hosp. Corp.*, 234 F. Supp. 3d 834, 837 (S.D. Tex. 2017)

To defeat a motion for summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Hous. Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Darden v. Simplicity Fin. Mktg., Inc.*, No. 4:18-CV-1737, 2019 WL 6119485, at *1 (S.D. Tex. Nov. 18, 2019).

## ANALYSIS

Texas has a four-year statute of limitations for foreclosure actions. *See* TEX. CIV. PRAC. & REM. CODE § 16.035; *Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d 226, 229 (5th Cir. 2019). The start of the four-year window can be triggered by the issuance of a notice of intent to accelerate a loan repayment. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 565–67 (Tex. 2001). After a mortgage loan is accelerated, a mortgagee or mortgage servicer has four years to sell the property before "the real property lien and a power of sale to enforce the real property lien become void." TEX. CIV. PRAC. & REM. CODE § 16.035(d).

"It has been the law of Texas at least since 1901 that the parties can abandon acceleration and restore the contract to its original terms by the parties' agreement or actions." *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 356 (Tex. App.—Houston [1st Dist.] 2012, no pet.). "A lender may unilaterally abandon acceleration either expressly or impliedly, through conduct inconsistent with a claim to the right." *Willbern v. Bayview Loan Servicing, LLC*, --- F. App'x ---, 2021 WL 126419, at *1 (5th Cir. Jan. 13, 2021). *See also Jatera Corp. v. US Bank Nat'l Ass'n*, 917 F.3d 831, 835 (5th Cir. 2019) ("The acceleration may be abandoned, either by the lender's unilateral actions or by agreement."). "If acceleration is abandoned before the limitations period expires, the note's original maturity date is restored and the noteholder is no longer required to foreclose within four years from the date of acceleration." *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 F. App'x 677, 679 (5th Cir. 2015). *See also Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015)

("Abandonment of acceleration has the effect of restoring the contract to its original condition, thereby restoring the note's original maturity date for purposes of accrual." (quotation omitted)). "Stated another way, after the acceleration has been abandoned—by notice of default, notice of rescission, or otherwise—then the limitations period ceases to run and does not restart until the lender exercises its option to re-accelerate." *Rachal v. Select Portfolio Servicing, Inc.*, No. 4:17-CV-871-ALM-CAN, 2018 WL 5724455, at *3 (E.D. Tex. Oct. 5, 2018).

"[T]he Fifth Circuit and Texas appellate courts have made clear that a formal notice of rescission is not the exclusive means for abandoning acceleration; indeed, there is no single form an abandonment must take." *Hollenshead v. Bank of Am., N.A.*, No. 4:18-CV-00724-ALM-CAN, 2020 WL 4615096, at *12 (E.D. Tex. May 19, 2020). "In the absence of an express notice of rescission of acceleration, the lender may show abandonment of acceleration by conduct." *Bracken v. Wells Fargo Bank, N.A.*, No. 05-16-01344-CV, 2018 WL 1026268, at *3 (Tex. App.—Dallas Feb. 23, 2018, pet. denied). That conduct must, in whatever form, "unequivocally manifest[] an intent to abandon the previous acceleration." *Boren*, 807 F.3d at 106. *See also Swoboda v. Ocwen Loan Servicing, LLC*, 579 S.W.3d 628, 633 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("Intent is the critical element, and its manifestation must be unequivocal.").

In this case, Wells Fargo initially triggered the four-year statute of limitations when it provided Logue with a notice of acceleration on February 13, 2009. The question I need to decide today is whether Wells Fargo abandoned the

acceleration through its subsequent actions. By granting full SCRA protections to Logue as a result of her marriage to active duty, non-borrowing spouse Kyle Logue, I conclude that Wells Fargo abandoned the prior acceleration and restored the promissory note's original maturity date.

In correspondence to Logue dated May 3, 2011 and August 9, 2011, Wells Fargo carefully explained that it was granting her "full" benefits available under the SCRA. Dkt. 42-2 at 27, 35. These benefits included forbearance from foreclosure, limiting the interest rate on her loan, and eliminating any applicable late fees. Indeed, Wells Fargo expressly told Logue:

> We are pleased to be able to extend to you the following privileges for the remainder of your spouse's active duty period.
>
> - You will not be asked to pay anymore than 6% on your loan.
> - You will not be assessed any late fees.

*Id.* at 35. Additionally, Wells Fargo made the benefits retroactive to December 1, 2009.

Wells Fargo's agreement to gratuitously extend full SCRA benefits to Logue is plainly inconsistent with its right of acceleration and foreclosure. In Texas, a lender waives its earlier acceleration when it "put[s] the debtor on notice of its abandonment . . . by requesting payment on less than the full amount of the loan." *Leonard,* 616 F. App'x at 680. *See also Martin v. Fed. Nat'l Mortg. Ass'n*, 814 F.3d 315, 318 (5th Cir. 2016) ("[T]he request for payment of less than the full obligation—after initially accelerating the entire obligation—[is] an unequivocal expression of the bank's intent to abandon or waive its initial acceleration."). By

voluntarily modifying the interest rate to six percent and refusing to assess any late fees, Wells Fargo sent a loud and clear message that it was no longer seeking to collect the full balance of the loan. To me, the summary judgment record is clear—Wells Fargo abandoned its right to proceed with foreclosure when it granted full SCRA benefits to Logue. *See Benamou v. Wells Fargo Bank Nat'l Ass'n*, No. 3:16-CV-401-L-BK, 2017 WL 1394949, at *4 (N.D. Tex. Feb. 5, 2017) ("By sending acceleration warnings requesting payment on less than the full amount of the Loan, Defendant gave Plaintiffs notice that any prior acceleration attempts were abandoned."); *NSL Prop. Holdings, LLC v. Nationstar Mortg., LLC*, No. 02-16-00397-CV, 2017 WL 3526354, at *5 (Tex. App.—Fort Worth Aug. 17, 2017, pet. denied) (concluding that "the January 2010 letter—which is replete with language inconsistent with the then-present right to foreclose—compels the conclusion that the lender abandoned the acceleration" (footnote omitted)).

Logue argues that "Wells Fargo has not cited a single case showing that SCRA benefits waive or abandon an acceleration." Dkt. 46 at 15. Admittedly, there does not appear to be any reported decisions addressing this issue. But that is of no moment. There also might not be any cases stating that the sky is blue, 2+2 = 4, or that J.J. Watt was the best player to ever don a Houston Texans' jersey. That doesn't make those statements false. As Wells Fargo correctly observes: "The law does not say that any particular conduct or set of facts must be present for waiver to have occurred. It requires only a manifest intention to abandon the acceleration." Dkt. 50 at 3 (citing *Boren*, 807 F.3d at 106). Given the particular

facts in this case, I am convinced that by providing Logue SCRA benefits in the summer of 2011, Wells Fargo demonstrated a manifest intention to abandon the previous acceleration of the loan.

Logue contends that Wells Fargo's granting of SCRA benefits did not serve as an abandonment of the notice of acceleration for limitations purposes, but rather acted, at best, to toll the four-year limitations period that began on February 13, 2009. Under Logue's theory, tolling began on May 3, 2011, when Wells Fargo granted Logue full SCRA benefits. Even so, Logue's problem is that SCRA benefits were not lifted until May 2019. Thus, when Wells Fargo exercised its option to re-accelerate on July 17, 2019, the four-year limitations period had yet to expire, even under Logue's innovative tolling approach. In a creative attempt to get around this formidable roadblock, Logue claims that the tolling period ended on May 1, 2016, the date Wells Fargo originally told Logue that SCRA benefits would end. Logue insists that she detrimentally relied on Wells Fargo's notice stating that her SCRA benefits would expire in May 2016; therefore, the SCRA's tolling of limitations should end on that date. Taking into account this tolling calculation, Logue asserts that the limitations period expired on February 11, 2018—before any foreclosure action was initiated.

Logue's tolling argument is plagued by several insurmountable deficiencies. First, the tolling theory is made out of whole cloth and enjoys not a shred of support in the case law. The law is crystal clear: abandonment of acceleration restores the promissory note's original maturity date. *See Boren*, 807 F. 3d at 106. It does not

toll the limitations period. Second, Logue can't disguise her detrimental reliance argument as an exception to abandonment to justify tolling. The Fifth Circuit has unequivocally held that detrimental reliance is not an exception to abandonment. *See Jatera*, 917 F.3d at 837 (holding that "detrimental reliance is not an exception to the lender's right to unilaterally withdraw an acceleration notice under Texas law"). Third, even if the tolling argument represented a sound legal theory (it doesn't), Logue has failed to show that she detrimentally relied on the proposed May 2016 expiration date. Logue claims that she "moved out of the Property in May 2017 in reliance on [her] belief that the SCRA benefits expired on May 1, 2016." Dkt. 46-4 at 2. But that's nonsense. How could Logue detrimentally rely on a May 2016 expiration date if she didn't move out of the property until a year afterwards? More fundamentally, Wells Fargo provided notice to Logue in April 2016 that the SCRA benefits would continue until December 2019. This April 2016 notice occurred *before* the benefits were scheduled to end in May 2016 and *well before* Logue allegedly moved out of the Property in May 2017. Thus, the April 2016 notice expressly negates Logue's alleged detrimental reliance on any prior representation that SCRA benefits would end in May 2016.

A suit to quiet title is an equitable remedy to clarify ownership by removing clouds on the title. *See Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007). To prevail on a quiet title claim, Logue must demonstrate "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Vernon v.*

*Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied). "[T]he plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). As discussed, Wells Fargo abandoned any acceleration of the debt that occurred on February 3, 2009. The statute of limitations re-set. As a matter of law, Logue cannot meet the third element of a quiet title claim. She cannot demonstrate that the lien on the Property is invalid or unenforceable due to the February 3, 2009 acceleration.

Similarly, Logue's request for a declaratory judgment fails. Logue seeks a declaration that the "limitations period has expired causing the Deed of Trust to become void and unenforceable." Dkt. 7 at 6. The sole basis for such a declaration is Logue's claim that the four-year statute of limitations has run on foreclosure. Because I find Logue's limitations argument unfounded, her request for a declaratory judgment should be dismissed.

**ATTORNEY'S FEES AND COSTS**

SLS also contends that it is entitled to $21,869.84 in fees and expenses incurred in defending this lawsuit. "Federal and Texas law both recognize that although the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser, such recovery is permissible if explicitly provided for by statute or an enforceable contract." *Rodriguez v. Quicken Loans, Inc.*, 257 F. Supp. 3d 840, 845 (S.D. Tex. 2017) (quotation omitted). Here, Sections 9 and 14 of the Deed of Trust provide that the lender may charge Logue those attorney's fees

and expenses incurred in protecting the lender's interest in the Property. The Deed of Trust further provides that expenses, including attorney's fees, incurred by the lender in protecting its rights in the Property become additional debt of the borrower. In support of its request for fees and expenses, SLS attaches to its summary judgment papers the affidavit of one its attorneys, Branch M. Sheppard. Mr. Sheppard attests that SLS has reasonably incurred fees and expenses in the amount of $21,869.84 ($21,386.50 in fees + $483.34 in costs) through the summary judgment proceedings.

In response to the fee request, Logue advances several arguments why she should not be held responsible for SLS's attorney's fees. First, Logue avers that SLS is not a "lender" as defined by the Deed of Trust. That is simply wrong. The original lender as defined by the Deed of Trust is Morel Mortgage, LLC. The Deed of Trust was unquestionably assigned to SLS on August 2, 2019, and the documentation establishing that assignment was recorded in the real property records of Harris County, Texas. SLS is the lender under the Deed of Trust.

Next, Logue claims that an award of attorney's fees in favor of SLS would be inequitable and unreasonable. In addressing this contention, I note that it is well-established that attorney's fees provided for in a deed of trust may be disallowed at the discretion of the district court if their allowance would be inequitable or unconscionable. *See id.* at 844 (Even when "the governing substantive law permits recovery, the decision whether to award attorney's fees and expenses remains subject to the district court's equitable discretion."). In the instant case, there is

nothing inequitable or unjust in awarding attorney's fees to SLS. SLS did nothing improper or untoward. It simply seeks to enforce the Deed of Trust, as any lender in such a situation would do. In an amazing display of chutzpah, Logue maintains with a straight face that, although she enjoyed nearly a decade of SCRA protection and possessed the Property without tendering a single mortgage payment since President George W. Bush occupied the Oval Office, I should declare Wells Fargo's lien invalid and award her free and clear title to the Property. Suffice it to say that if I did balance the equities involved here, they would weigh heavily in favor of SLS.[3]

**REPLEADING**

As almost an afterthought, Logue asks me to allow her to replead if I "find[] curable faults with any of the allegations." Dkt. 46 at 27. Candidly, I am not sure what Logue means when she refers to "curable faults." In this case, it would not make any difference whatsoever if Logue amended her lawsuit. I simply do not

[3] SLS also seeks attorney's fees and costs under the Texas Civil Practices and Remedies Code because, in its estimation, Logue's entire suit is frivolous. Based on SLS's argument, however, it is unclear whether state or federal law should control my analysis on this issue. *See DTND Sierra Invs., L.L.C. v. HSBC Bank USA, N.A.*, 627 F. App'x 285, 287 (5th Cir. 2015) ("The Federal Rules of Civil Procedure may not be retroactively applied to aspects of a case that occurred in state court prior to removal to federal court. As a result, we apply state sanctions rules to pleadings filed in state court before removal to federal court." (cleaned up)). Setting that issue to the side for a moment, I am unconvinced that Logue's suit was totally frivolous. *See Taylor v. Johnson*, 257 F.3d 470, 472 (5th Cir. 2001) ("A complaint is frivolous if it lacks an arguable basis in law or fact."); *Jackson v. Tex. Bd. of Pardons & Paroles*, 178 S.W.3d 272, 278 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("A proceeding is frivolous when it lacks an arguable basis either in law or in fact. (quotation omitted)). *See also Frivolous*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Frivolous" means "[l]acking a legal basis or legal merit; manifestly insufficient as a matter or law.").

believe there is a genuine issue of material fact that survives summary judgment. Important to this discussion, I entered a docket control order more than a year ago which established a February 28, 2020 deadline for the parties to amend their pleadings. "Rule 16(b) provides that once a scheduling order has been entered, it 'may be modified only for good cause and with the judge's consent.'" *Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009) (quoting FED. R. CIV. P. 16(b)(4)). "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quotation omitted). Because Logue has failed to show good cause to amend, her request is denied.

## CONCLUSION

For the reasons identified above, I recommend that Defendants' motions for summary judgment (Dkts. 41, 42) be **GRANTED**, and this case dismissed. Additionally, SLS is entitled to recover the sum of $21,869.84 in attorney's fees and expenses. In accordance with the parties' agreement in the Deed of Trust, the $21,869.84 in attorney's fees and expenses related to SLS's protection of its interest in the Property is deemed added to Logue's debt obligations under the promissory note and Deed of Trust.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order

2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED on this 4th day of March 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE